UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALICIA KELLY,
o/b/o A.N.B., a minor,

                 Plaintiff,         Civil Action No. 20-13109

v.                                        David R. Grand
                                          United States Magistrate Judge[1]

COMMISSIONER OF
SOCIAL SECURITY,

                 Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (ECF No. 21), GRANTING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 18),
AND REMANDING THE CASE FOR FURTHER PROCEEDINGS**

Plaintiff Alicia Kelly brings this action on behalf of her minor daughter, A.N.B. ("Plaintiff"),[2] pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 18, 21).

**A.    Procedural History**

Plaintiff was born on January 18, 2008, making her almost eleven years old at the

---

[1] The parties have consented to the undersigned exercising jurisdiction over all proceedings in this civil action pursuant to 28 U.S.C. § 636(c)(1). (ECF No. 17).

[2] For convenience, the Court will refer to A.N.B., the minor child, as "Plaintiff" throughout this Opinion and Order, although her mother, Alicia Kelly, is the named plaintiff in this action.

time her application for SSI was filed on January 10, 2019. (PageID.101-02, 182).[3] Plaintiff alleges disability primarily as a result of attention deficit hyperactivity disorder ("ADHD") and a learning disorder. (PageID.177).

After Plaintiff's SSI application was denied initially on April 30, 2019 (PageID.115-18), an administrative hearing was held on November 21, 2019, before ALJ Elias Xenos (PageID.78-100). Plaintiff and Ms. Kelly appeared at the hearing, accompanied by non-attorney representative Dannelly Smith, and Ms. Kelly testified on Plaintiff's behalf. (*Id.*). On January 9, 2020, the ALJ issued a written decision finding that Plaintiff is not disabled under the Act. (PageID.65-74). On September 20, 2020, the Appeals Council denied review. (PageID.51-55). On behalf of Plaintiff, Ms. Kelly timely filed for judicial review of the final decision on November 20, 2020. (ECF No. 1).

**B.     Framework for Child Disability Determinations**

A child under age eighteen is considered "disabled" within the meaning of the Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Social Security regulations set forth a sequential three-step process for determining a child's disability claims: first, the child must not be engaged in "substantial gainful activity"; second, the child must have a "severe" impairment; and third, the severe impairment must meet, medically equal, or

---

[3] Standalone citations to "PageID.___" are to the administrative transcript in this case, which can be found at ECF No. 12.

functionally equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *See* 20 C.F.R. § 416.924(a).

To "meet" a listed impairment, a child must demonstrate both the "A" and "B" criteria of the impairment. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. Paragraph A of the Listings is a composite of medical findings that are used to substantiate the existence of a disorder, whereas the purpose of the paragraph B criteria is to describe impairment-related functional limitations applicable to children. *See id.* Further, to be found disabled based on meeting a listed impairment, the claimant must exhibit all the elements of the Listing. *See Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).

If a child's impairment does not "meet" a Listing, the impairment may still be medically or functionally equal in severity and duration to the medical criteria of a listed impairment. *See* 20 C.F.R. § 416.926a. "Medical equivalency is covered by 20 C.F.R. § 416.926; functional equivalency is covered by Section 416.926a." *Vansickle v. Comm'r of Soc. Sec.*, 277 F. Supp. 2d 727, 729 (E.D. Mich. 2003).

"To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment." *Walls v. Comm'r of Soc. Sec.*, No. 1:08CV254, 2009 WL 1741375, at *8 (S.D. Ohio June 18, 2009) (citing 20 C.F.R. § 416.926(a)). A claimant can demonstrate medical equivalence in any of three ways:

> (1) by demonstrating an impairment contained in the Listings, but which does not exhibit one or more of the findings specified in the particular listing, or exhibits all of the findings but one or more of the findings is not as severe as specified in the particular listing, if the claimant has other findings related to his impairment that are at least

3

>of equal medical significance to the required criteria;
>
>(2) by demonstrating an impairment not contained in the Listings, but with findings at least of equal medical significance to those of some closely analogous listed impairment; or
>
>(3) by demonstrating a combination of impairments, no one of which meets a Listing, but which in combination produce findings at least of equal medical significance to those of a listed impairment.

*Evans ex rel. DCB v. Comm'r of Soc. Sec.*, No. 11-11862, 2012 WL 3112415, at *6 (E.D. Mich. Mar. 21, 2012) (quoting *Koepp v. Astrue*, No. 10-C-1002, 2011 WL 3021466, at *10 (E.D. Wis. July 22, 2011)); *see also* 20 C.F.R. § 416.926. "The essence of these subsections is that strict conformity with the Listing Requirements is not necessarily required for a finding of disability. If a plaintiff is only able to demonstrate most of the requirements for a Listing, or if he or she is able to demonstrate analogous or similar impairments to the impairments of a Listing, the plaintiff may nonetheless still satisfy the standards if the plaintiff can show impairments of equal medical significance." *Evans*, 2012 WL 3112415, at *7 (quoting *Emeonye v. Astrue*, No. 04-03386 SC, 2008 WL 1990822, at *4 (N.D. Cal. May 5, 2008)).

Regarding functional equivalence, there are six "domains" that an ALJ considers: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a. Functional equivalence to a listed impairment exists when the child has an "extreme" limitation in one of the six domains or "marked" limitations in two of the six. *See* 20 C.F.R. § 416.926a(d). An "extreme" limitation exists when a child's impairment(s) interferes "very seriously" with

the child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(3)(i). A "marked" limitation results if the child's impairment(s) interferes "seriously" with the child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(2)(i).

**C.     The ALJ's Findings**

At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 10, 2019, the application date. (PageID.66). At Step Two, the ALJ found that Plaintiff has the severe impairments of ADHD, specific learning disability, borderline intellectual functioning, and adjustment disorder with anxiety. (*Id.*). At Step Three, the ALJ concluded that these impairments do not meet or medically equal a listed impairment. (PageID.67). The ALJ also found that Plaintiff's impairments do not functionally equal any Listing because, although she has a marked limitation in the domain of acquiring and using information, she has less than marked limitations in the domains of attending and completing tasks, interacting and relating with others, caring for herself, and health and physical well-being, and no limitation in the domain of moving about and manipulating objects. (PageID.68-69). Accordingly, the ALJ determined that Plaintiff is not disabled under the Act. (PageID.74).

**D.     Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has

5

made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id*. (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001); *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's

decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**E.     Analysis**

As set forth above, the ALJ found that Plaintiff has a marked limitation in the domain of acquiring and using information; less than marked limitations in the domains of attending and completing tasks, interacting and relating with others, caring for herself, and health and physical well-being; and no limitation in the domain of moving about and manipulating objects.  (PageID.68-69).

Plaintiff's sole argument before this Court is that the ALJ erred in finding that she has a less than marked limitation in the domain of attending and completing tasks.  (ECF No. 18).  In order for a limitation to be considered marked, the child's impairments must interfere "seriously" with her ability to independently initiate, sustain, or complete activities.  *See* 20 C.F.R. § 416.926a(e)(2)(i).  A marked limitation also means a limitation that is "more than moderate" but "less than extreme."  *Id.*

The domain of attending and completing tasks addresses how well the child is able to focus and maintain her attention, and how well she begins, carries through, and finishes her activities, including the pace at which she performs activities and the ease with which she changes them.  *See* 20 C.F.R. § 416.926a(h).  A school-age child (age 6 to attainment of age 12) should be able to focus her attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and

7

homework assignments; concentrate on details and not make careless mistakes in her work (beyond what would be expected of non-impaired school-age children); change activities or routines without distracting herself or others and stay on task and in place when appropriate; sustain her attention well enough to participate in group sports, read alone, and complete family chores; and complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders or accommodations. *See* 20 C.F.R. § 416.926a(h)(2)(iv). Examples of limited functioning in this domain include individuals who are easily startled, distracted, or overreactive to sounds, sights, movements, or touch; are slow to focus on, or fail to complete activities of interest; repeatedly become sidetracked from activities or frequently interrupt others; are easily frustrated and give up on tasks (including ones capable of being completed); or require extra supervision to remain engaged in an activity. *See* 20 C.F.R. § 416.926a(h)(3).

In concluding that Plaintiff has a less than marked limitation in the domain of attending and completing tasks, the ALJ reasoned:

> Although the claimant has a history of ADHD and problems with attention, focus, and hyperactivity, the undersigned find[s] the claimant has a less than marked limitation in this domain. The record reflects the claimant did well with medication (Ex. 2F/4). Further, when the claimant was not on medications, the claimant made improvements academically with the help of a therapist and tutoring (Ex. 5F/1, 10F/26). Further, the claimant was without medication for approximately three years without significant findings (Ex. 10F/26, 10F/52).

(PageID.72). For the reasons set forth below, the Court finds that the ALJ's conclusion in this respect is not supported by substantial evidence.

First, the ALJ concluded that Plaintiff "did well with medication[.]" (*Id.*). The

8

Commissioner appears to concede that this conclusion was erroneous, arguing not that it was supported by substantial evidence, but that any error in this respect is harmless. (ECF No. 21, PageID.596). The Court agrees that the ALJ's conclusion was erroneous, but disagrees that the error was harmless. To begin with, the single page cited by the ALJ in support of this conclusion – Exhibit 2F/4 – does not say anything about Plaintiff's alleged improvement on medication; rather, it simply indicates that Plaintiff had "not been consistently on the medication" and that "the importance of maintaining the medication" was emphasized. (PageID.266). Although a separate portion of this January 2016 clinic note suggests that Plaintiff's mother noted a "good change" when Plaintiff was taking metadate for ADHD (PageID.263), other evidence indicates that Plaintiff still became "inattentive, distracted and hyperactive in the afternoon" during this same period of time (PageID.269). Moreover, subsequent treatment records indicate that, in September 2016, Plaintiff was unable to focus at school or sit still, and Ms. Bell received "multiple phone calls" from the school about Plaintiff being disruptive in class. (PageID.276-77). Similarly, in October 2016, Plaintiff presented for a neurological evaluation, where her mother indicated that she:

> … is very emotional, hyperactive, and impulsive. She frequently interrupts and is disruptive. She is up out of her seat and crawling around on the floor at school. She is very easily frustrated and has tantrums.

(PageID.283-84). At that time, her mother reported that she had stopped giving Plaintiff metadate because it was "not effective." (PageID.284). Indeed, Ms. Bell later indicated, at a consultative examination and during her hearing testimony, that she took Plaintiff off

this medication because of adverse side effects, including migraine headaches. (PageID.92-93, 372). Finally, a March 14, 2017 Request for Child Mental Status Examination with IQ indicates that Ms. Bell reported, "[Plaintiff] was done with the medication and then the doctor took her off. It wasn't working." (PageID.334). Thus, in concluding that Plaintiff "did well with medication[,]" the ALJ appears to have selectively viewed the evidence, citing one portion of one record that supported his conclusion, while ignoring significant evidence to the contrary. This is not permissible. *See, e.g., Gordon v. Comm'r of Soc. Sec.*, No. 14-11990, 2015 WL 5355477, at *14 (E.D. Mich. Aug. 12, 2015) ("It is generally recognized that an ALJ may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding.") (internal quotations omitted); *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) ("a substantiality of evidence evaluation does not permit a selective reading of the record").

Next, the ALJ found Plaintiff to have a less than marked limitation in attending and completing tasks because when she was not on medication, she "made improvements academically with the help of a therapist and tutoring[.]" (PageID.72). In support of this, conclusion, the ALJ cited portions of two records – one from March 2017, which merely states that Plaintiff was seeing a therapist and involved in a tutoring program, and another from August 2019, where Plaintiff's mother reported that, at the end of the prior school year, Plaintiff was "doing better academically" and "had brought her grades up." (PageID.334, 495). As Plaintiff points out, however, IEP records from September 2019 show that Plaintiff's math and writing skills were still at the first-grade level, despite the fact that, by then, she was in fifth grade. (PageID.387). Given that Plaintiff repeated

second grade (PageID.319) and was still performing four grade levels behind her peers, it is difficult to comprehend how the ALJ concluded that she had actually improved academically to the point that she had only a less than marked limitation in the domain of attending and completing tasks. Indeed, at the hearing before the ALJ, Ms. Kelly testified as to the fact that Plaintiff was still enrolled in special education, and further testified that any improvement in the prior year was temporary:

> She's not doing too good at all [this academic year]. The school kind of just gave her grades to make it look good for her, but she can't read. She's very good in math. That's the only thing that she's good in, but everything else that she has to do, she can't do it on her own. So she's not doing good at all.

(PageID.84-85).

Moreover, as Plaintiff notes, additional evidence in the record supports a finding that she has a marked limitation in this domain. For example, a teacher questionnaire was completed in March 2019 by Plaintiff's fourth grade teacher, Lashaun Houze, who confirmed that Plaintiff's reading, math, and writing skills were at the first-grade level. (PageID.190). Ms. Houze further opined that Plaintiff has difficulties in the domain of attending and completing tasks, including very serious problems in refocusing to task when necessary, carrying out multi-step instructions, organizing her own things or school materials, completing class/homework assignments, completing work accurately without careless mistakes, and working at a reasonable pace/finishing on time. (PageID.192). Similarly, a second teacher questionnaire was completed in November 2019, by Plaintiff's fifth grade teacher, Marlon Brown. (PageID.207-14). Mr. Brown noted that Plaintiff has a very serious problem in working at a reasonable pace/finishing on time and a serious

problem focusing long enough to finish an assigned activity or task; refocusing to task when necessary, carrying out multi-step instructions; completing class/homework assignments; and completing work accurately without careless mistakes. (PageID.209).[4]

Finally, the record contains a significant amount of other evidence supporting a conclusion that Plaintiff has a marked limitation in the domain of attending and completing tasks. For example, in a classroom observation conducted in September 2015, it was noted that Plaintiff's weaknesses included being attentive in class, staying on task, completing assigned work in the required time, and following directions without repetition. (PageID.234). During a November 2016 biopsychosocial assessment, it was noted that Plaintiff had trouble completing assignments, following directions, and staying in the classroom, and her mother was "called a lot regarding disruptive behaviors." (PageID.302). In August 2017, Ms. Bell reported that Plaintiff struggled to maintain focus and follow directions in school. (PageID.532). In August 2019, Plaintiff resumed therapy,

---

[4] The Commissioner correctly argues that because Plaintiff's teachers are non-medical sources, the ALJ was not required to evaluate their opinions in any specific manner; rather, he simply needed to "consider" these opinions, which he did (PageID.72). (ECF No. 21, PageID.597) (citing 20 C.F.R. § 416.920c(d) and 416.945(a)(3)). Ultimately, however, the ALJ's decision must be supported by substantial evidence. The opinions in question were issued by individuals who had long-term, close contact with Plaintiff, and found her to have the "very serious" problems discussed above. Under Social Security Ruling 09-2p, "Evidence from other sources who are not medical sources and who know and have contact with the child can also be very important to our understanding of the severity of a child's impairment(s) and how it affects day-to-day functioning. These sources include parents and caregivers, [and] educational personnel[.]" *Soc. Sec. Rul. 09-2p*, 2009 WL 396032, at *4 (Feb. 18, 2009). For the reasons discussed herein, the opinions of Plaintiff's two most recent teachers appear to be consistent with the overwhelming majority of the other evidence in the record. Accordingly, at least given the ALJ's erroneous finding regarding the impact of Plaintiff's medication and the serious questions about Plaintiff's purported academic "improvements," the Court simply cannot conclude that the ALJ's analysis satisfies the substantial evidence test's relatively low threshold.

"due to issues with anger and talking back[,]" and she reportedly had difficulty focusing and remembering her school work, unless it was directly in front of her. (PageID.471, 495). Similarly, in a September 2019 IEP, it was noted that, "As a result of having ADHD challenges, [Plaintiff] struggles to focus on class assignments. She presents [with] difficulty [] in completing school lessons. Lastly, her ADHD impedes her learning, ability to complete task[s], and focus on class work assignments without multiple redirection prompts." (PageID.390). And, in an October 2019 psychiatric evaluation, it was noted that Plaintiff had focus difficulties; a history of hyperactivity, inattention, distractibility, and impulsivity; and ongoing mood swings. (PageID.515-16). She also became overwhelmed when she did not comprehend information she is learning.[5] (PageID.516). As explained above, *see supra* at 7-8, these are all hallmarks of a child suffering from a marked limitation in the domain of attending and completing tasks.

In sum, taking the evidence of record as a whole, the Court simply cannot conclude that substantial evidence supports the ALJ's determination that Plaintiff has a less than marked limitation in the domain of attending and completing tasks. The reasons articulated by the ALJ in support of his conclusion in this respect are belied by the evidence, which

---

[5] In the face of this evidence, the Commissioner points to the opinion of state agency consultants Jerry Evans, M.D. (a pediatrician) and Michele Leno, Ph.D. (a psychologist). (ECF No. 21, PageID.594-95). Drs. Evans and Leno reviewed the record and concluded that Plaintiff has a less than marked limitation in attending and completing tasks solely because she was "attentive, alert, and able to follow instructions" during her consultative examination. (PageID.105). The ALJ found this opinion persuasive (PageID.72), and the Commissioner argues that it provides substantial evidence for the ALJ's determination. The Court disagrees that this piece of evidence – based entirely on Plaintiff's presentation during a one-time examination – constitutes "substantial evidence" in light of the significant evidence to the contrary discussed herein which must be meaningfully weighed by the ALJ in the first instance.

appears to demonstrate that Plaintiff has a serious problem with focusing and maintaining attention, carrying out assigned activities, completing classroom and homework assignments, and transitioning between tasks. *See* 20 C.F.R. § 416.926a(h). For these reasons, and to allow for a more thorough and balanced evaluation of the record evidence, remand is required.

## III. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Commissioner's Motion for Summary Judgment **(ECF No. 21)**; **GRANTS IN PART** Plaintiff's Motion for Summary Judgment **(ECF No. 18)** to the extent it seeks remand and **DENIES IN PART** that motion to the extent it seeks an award of benefits; and, pursuant to sentence four of 42 U.S.C. § 405(g), **REMANDS** this case to the ALJ for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

Dated: April 13, 2022  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 13, 2022.

s/Eddrey O. Butts  
EDDREY O. BUTTS  
Case Manager